UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


ARACELY HERNANDEZ,                                Case No. 3:20-cv-01792-CL

        Petitioner,                                    FINDINGS AND
                                                  RECOMMENDATION

     v.

PAULA MYERS, Superintendent,
Coffee Creek Correctional Facility,

        Respondent.

_____

CLARKE, Magistrate Judge.

     Petitioner Aracely Hernandez ("Petitioner"), an individual in custody at Coffee Creek

Correctional Facility, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. Because

Hernandez's claims are procedurally defaulted, the district judge should DENY the Petition for

Writ of Habeas Corpus (ECF No. 1) and decline to issue a certificate of appealability.

///

///


1 - FINDINGS AND RECOMMENDATION

BACKGROUND

On July 13, 2015, a Washington County grand jury returned an indictment charging Petitioner with one count each of Assault in the First Degree, Assault in the Second Agree, and Unlawful Use of a Weapon. (Resp't Exs. (ECF No. 16), Ex. 102.) The charges arose from Petitioner's attack on her former roommate, R, which caused R serious physical injury. (*Id.*; Resp't Ex. 106 at 110.[1]) Petitioner pleaded not guilty on all charges and proceeded to trial in December 2015.

At trial, the State presented evidence that on the morning of June 27, 2015, Eduardo Pedrisco ("Pedrisco") drove R to Petitioner's residence, where he went inside to speak with Petitioner. (Resp't Ex. 106 at 37-39.) When Petitioner became aware that Pedrisco was with R, she became visibly angry and told Pedrisco to "get [R] out of here" because she "didn't want [R] at her house." (*Id.* at 44.) Pedrisco left the house as instructed, but Petitioner motioned for him to come back before he could drive away with R. Pedrisco then went back inside where Petitioner, who was holding a cup, asked him to wait in the living room while she spoke privately with R outside. (*Id.* at 48-52.)

R was sitting in the passenger seat of Pedrisco's car with the window down when Petitioner emerged from the house. (*Id.* at 118.) Petitioner approached R and poured hot liquid on her through the open window, dropped a mug inside the car, and fled. (*Id.* at 118-22.) R immediately climbed out of the vehicle, removed her shirt, and poured a bottle of water on herself. (*Id.*) R testified that the burns caused by the scalding liquid were more painful than childbirth and that it felt like her "skin was falling off." (*Id.* at 120.)

---

[1] When citing to Respondent's Exhibits, the Court refers to the page numbers assigned listed in the lower right corner of each exhibit.

Moments later, Petitioner ran inside and locked the door, and told Pedrisco, who still was waiting in the living room, to leave with R. Pedrisco testified that he could hear R screaming outside, and that he observed R pouring water on herself when he walked out of Petitioner's house. (Resp't Ex. 106 at 56-58.) After giving R more water to pour over her burns, Pedrisco drove R to the emergency room. (*Id.* at 59-60.) Before they left, R threw the mug Petitioner had dropped inside the car into Petitioner's yard.

The emergency room doctor who treated R observed that she had first and second-degree burns covering approximately eighteen percent of her total body surface area. (*Id.* at 169.) The doctor testified that R's injuries were "very significant" and "in the top decile of all burns" that he saw on a regular basis. (*Id.*) The doctor testified that he gave R powerful narcotics for the pain, and that he "carefully advis[ed] her about what she should do to minimize scar[ring] because [there was] definitely going to be a scar with this kind of burning, that was apparent . . . immediately."[2] (*Id.* at 170.)

Later that day, an officer with the Hillsboro Police Department met R at the hospital to investigate. (Resp't Ex. 106 at 79.) The officer noted that R was "crying and moaning and wincing in pain, with [her] eyes kind of squinted and . . . [her] teeth kind of gritted." (*Id.* at 80.) After interviewing R and photographing her injuries, the officer went to Petitioner's home and took photographs of the property. (*Id.* at 87.) At that time, the officer observed a yellow shirt and a white mug in Petitioner's front yard, both of which were consistent with R's account. (*Id.* at 88.) The officer photographed both items, and the photographs later were submitted to the jury. (*Id.* at 87-91.)

---

[2] Six months after the attack, R had four- to five-inch scars on her back, shoulder, breast, and hand. (Resp't Ex. 106 at 129-134.)

Petitioner later discussed the attack with another individual in custody, Susan Mendoza ("Mendoza"), over breakfast in the county jail. (*Id.* at 238-39.) Mendoza testified that Petitioner told her that "she got [R] and gave her what she deserved and that she poured hot liquid on her." (*Id.* at 149.) Mendoza also testified that Petitioner claimed to have attacked R because R "killed her dog and burned her cat[.]"[3] (*Id.* at 150.)

Petitioner testified on her own behalf, claiming that she could not have thrown hot water on R because she had been "in Forest Grove with a friend" on the day of the attack. (*Id.* at 209-11.) Petitioner also testified that her home was without power on the day in question because she had not paid the electric bill.[4] (*Id.* at 212.) On cross-examination, Petitioner denied that she had ever spoken to Mendoza, but admitted to writing Mendoza a letter stating that she had "fucked up" R. (*Id.* at 219-21.) Petitioner claimed, however, that the letter was just "jail talk" or "jail fiction" to ensure her survival while in custody. (*Id.* at 220-22.)

The jury returned guilty verdicts on all counts, voting 11-1 in favor of conviction on Count One — Assault in the First Degree — but voting unanimously in favor of conviction on the remaining counts. (Resp't Ex. 107 at 91-92.) The prosecutor moved to poll the jury, but the trial court denied the request as untimely. (Resp't Ex. 107 at 93.) The trial court ultimately sentenced Petitioner to a custodial term totaling 120 months. (Resp't Ex. 101 at 9-10.)

Petitioner appealed, raising two assignments of error, as follows:

---

[3] R testified at trial that she never injured or killed any of Petitioner's animals. (Resp't Ex. 106 at 186.)

[4] In rebuttal, the State presented the testimony of Rebecca Bottemiller, a paralegal with Portland General Electric, who testified that the power was on in Petitioner's home on June 27, 2015. (Resp't Ex. 107 at 28-32.)

> FIRST ASSIGNMENT OF ERROR:  The trial court erred in admitting Jeff Lesowski's testimony about the ages of the victims of defendant's prior convictions.
>
> SECOND ASSIGNMENT OF ERROR:  The trial court erred in refusing to poll the jury.

(Resp't Ex. 108 at 15, 21.) The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. (Resp't Exs. 110, 111.)

Petitioner then filed a petition for post-conviction relief, which later was amended by postconviction counsel. (Resp't Ex. 113, 114.) However, Petitioner eventually waived her right to counsel and filed a second amended petition for postconviction relief *pro se*, raising a number of claims based on the ineffectiveness of trial counsel, prosecutorial misconduct, and trial court error. (Resp't Exs. 116, 121 at 5-11.) After a trial at which Petitioner testified, the postconviction court made findings on the record as to each of Petitioner's claims and denied relief. (Resp't Ex. 121 at 61-63.) In a written judgment, the postconviction court provided additional findings of fact and "adopt[ed] defense memo [and] arguments as additional basis for its ruling." (Resp't Ex. 122.)

Petitioner appealed the postconviction court's decision, and the Oregon Court of Appeals affirmed without opinion. (Resp't Exs. 130, 136.) Petitioner then moved for reconsideration, but the appellate court denied the motion. (Resp't Exs. 132, 133.) Petitioner thereafter filed a petition for review before the Oregon Supreme Court, arguing that "the petition for reconsideration and review should be allowed, limited to the issue of the appropriate disposition of this case in light of *Ramos v. Louisiana*[.]" (Resp't Ex. 134.) The Oregon Supreme Court denied review. (Resp't Ex. 135.)

5 - FINDINGS AND RECOMMENDATION

On October 16, 2020, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in this Court,[5] raising four grounds for relief with numerous subparts. In Ground Two, Petitioner raises several claims based on prosecutorial misconduct, including a claim that the prosecutor "used fraud . . . to secure the petitioner's conviction." (Pet. at 16-18.) In Ground Three, Petitioner raises several "judicial misconduct" claims based on trial court error, including the trial court's refusal to poll the jury. (Pet. at 18-21.) Finally, in Ground Four, Petitioner asserts that appellate counsel was ineffective in several respects. (Pet. at 21-23.)

DISCUSSION

Respondent urges this Court to deny habeas relief, arguing that the four grounds for relief asserted in the petition are procedurally defaulted in their entirety. (Resp. to Am. Pet. (ECF No. 14) at 13-14; Reply (ECF No. 40) at 3-4.) Petitioner argues in response that her claims are not procedurally barred because she fairly presented each claim to the state courts. (Pet'r's Reply at 2.) This Court disagrees.

A habeas petitioner generally must exhaust all remedies available in state court, either on direct appeal or through collateral proceedings, before a federal court may consider granting habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A) (instructing that a court may not issue a writ of habeas corpus on behalf of an individual in state custody unless "the applicant has exhausted the remedies available in the courts of the State"); *see also Smith v. Baldwin*, 510 F.3d 1127, 1137 (9th Cir. 2007) (noting that a prisoner must first exhaust available remedies before a federal court may consider the merits of a habeas petition). Generally, a petitioner satisfies the exhaustion requirement "by fairly presenting the federal claim to the appropriate state courts . . . in the manner

---

[5] Petitioner previously filed a petition for federal habeas relief in this Court while her postconviction appeal was pending. (Resp't Ex. 125.) This Court dismissed the petition without prejudice on March 22, 2019. (Resp't Exs. 128, 129.)

required by the state courts, thereby 'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915–16 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)) (alteration in original); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete rounds of the state's established appellate review process").

If a petitioner failed to present her claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and therefore are not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In this respect, a petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Id.* at 446; *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991). An individual in state custody is barred from raising procedurally defaulted claims in federal court unless she "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

As noted, Petitioner raises four grounds for relief, each with numerous subclaims, based on the ineffective assistance of both trial and appellate counsel, prosecutorial misconduct, and trial court error. However, at the conclusion of her direct appeal and postconviction proceedings, Petitioner presented to the Oregon Supreme Court only three issues for review: (1) whether the trial court erred in admitting Jeff Lesowski's testimony about the ages of the victims of defendant's

prior convictions; (2) whether the trial court erred in refusing to poll the jury; and (3) whether Petitioner was entitled to relief from her conviction by a non-unanimous jury in light of the Supreme Court's decision in *Ramos v. Louisiana*. (Resp't Exs. 108, 134.)

Fair presentation required Petitioner to raise her claims to the Oregon Supreme Court in a procedural context in which it would assess the merits of her claims. Petitioner did not include her ineffective assistance of counsel,[6] ineffective assistance of appellate counsel, or prosecutorial misconduct claims in her petition for review to the Oregon Supreme Court, and thus the highest state court did not have an opportunity to pass on the merits of those claims. Accordingly, Petitioner failed fairly to present Grounds One, Two, and Four, and because she can no longer do so, her claims are procedurally defaulted. *See* OR. REV. STAT. § 138.510(3) (setting forth a two-year limitation period in which to file for postconviction relief); OR. REV. STAT § 138.550(3) (instructing that all grounds for relief must be asserted in the original or amended postconviction relief petition unless the grounds could not reasonably have been raised).

Procedural default also bars the claims of trial court error alleged Ground Three. Among other things, Petitioner alleges in Ground Three that the trial court violated her Sixth Amendment right to a fair trial by refusing to poll the jury. Although Petitioner properly exhausted a claim challenging the trial court's refusal to poll the jury on direct appeal, she presented that claim to the Oregon Court of Appeals as a matter of state rather than federal law. Indeed, Petitioner at no point raised the federal claim she seeks to advance here. This does not constitute fair presentation. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (explaining that fair presentation requires a

---

[6] Petitioner alleges that trial counsel was ineffective for, among other things, failing to object to portions of Jeff Lesowski's testimony. Petitioner properly exhausted a claim challenging such testimony on direct appeal, but presented that challenge based on trial court error, not the ineffective assistance of counsel. Accordingly, Petitioner failed fairly to present her ineffective assistance claim concerning trial counsel's failure to object to the testimony of Jeff Lesowski.

petitioner "to alert the state courts to the fact that he was asserting a claim under the United States Constitution[,]" and that the "mere similarity between a claim of state and federal error is insufficient to establish exhaustion") (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). Furthermore, Petitioner failed properly to raise any of the other subclaims asserted in Ground Three to the Oregon Supreme Court for review.[7] Accordingly, Petitioner failed fairly to present Ground Three, and because she may no longer do so, it is procedurally defaulted. *See Kellotat v. Cupp*, 719 F.2d 1027, 1030 (9th Cir. 1983) (explaining that "most trial error must be raised by direct appeal to the Oregon Court of Appeals"); OR. REV. STAT. 19.255(1) (requiring that "a notice of appeal must be served and filed within [thirty] days after the judgment appealed from is entered in the register").

As explained above, all grounds for relief asserted in the petition are procedurally defaulted, and Petitioner presents no facts or authorities on which this Court may excuse the default. Habeas relief therefore is precluded in this case.

CONCLUSION

Based on the foregoing, the district judge should DENY the Petition for Writ of Habeas Corpus (ECF No. 1), and should DISMISS this proceeding, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore the district judge also should DENY a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

---

[7] To the extent Petitioner raised to the Oregon Supreme Court a claim challenging her conviction by a non-unanimous jury, such claim was not properly before the court because she failed to raise it during the underlying postconviction proceedings. *See Casey v. Moore*, 386 F.3d 896, 917 (9th Cir. 2004) (holding that the petitioner "did not fairly present his federal law claims when he raised them for the first and only time upon petitioning for discretionary review to the Washington State Supreme Court"). Petitioner's non-unanimous jury claims therefore are procedurally defaulted, and even if they were not, such claims are not colorable because the jury unanimity rule announced in *Ramos* is not retroactive in cases on federal collateral review. *Edwards v. Vannoy*, 141 S. Ct. 1547, 1559 (2021). Petitioner's arguments to the contrary are without merit.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___5___ day of October, 2021.

MARK D. CLARKE
United States Magistrate Judge